McGEHEE, S.J.,
for the Court:[1]
¶ 1. This domestic case was originally heard by Chancellor Edwin Roberts, who is now deceased: While presiding over the Boatwrights’ case, Judge Roberts accepted an invitation from Grace Boatwright’s attorney to participate in a turkey hunt. On the day of a scheduled hearing, Toulman Boatwright’s attorney inquired about the *955 hunt; Judge Roberts then continued the case. Thereafter Judge Roberts entered two orders relating to matters heard by him prior to the turkey hunt. Then Judge Roberts recused on his own motion. Toul-man requested a new trial based on his allegation of bias by Judge Roberts;» or, in the alternative, he requested an order altering or amending certain relief granted by Judge Roberts. Ultimately, Toulman’s motion was heard by a special judge, who granted Toulman some relief but denied his motion for a new trial and all other relief. We affirm the trial court’s judgment.
¶2. This Court recognizes the ultimate importance of the integrity of the judiciary. Judicial integrity is vitally important to the bench, the bar, our society as a whole, and especially to litigants. To that end; judges must always conduct themselves in ways that promote the integrity and independence of the judieiary. The high standards of judicial integrity and independence do not operate as a complete bar to a judge’s acceptance of social invitations. Timing is critical. Clearly a judge may not accept an invitation of any kind that might call into question his independence or integrity in any matter over which the judge is presiding. An invitation to turkey hunt, or any other similar social invitation,. extended by one .of the attorneys who is then, appearing in a contested matter, is one that .must be refused. Judge Roberts’s voluntary recusal on, his own motion reflects his acknowledgment of this principle. The ideal course for a sitting judge is to avoid the potential conflict in the first place. There are occasions when a judge sees a conflict in retrospect, then recuses. Judge Roberts recused; nothing more, was required.
¶3. Judge Roberts’s entry of two orders after the turkey hunt and prior to recusal was not error. Judge Roberts’s entry of these two orders, addressing issues heard prior to the turkey hunt, was not only- proper, it was required as a part of the completion of his duties in this matter.
FACTS AND PROCEDURAL HISTORY
¶ 4. This matter is before the Court a second time. Toulman’s motion for a new trial was initially denied by Judge Glenn Alder son, who was appointed after Judge Roberts’s, recusal. Toulman appealed. Boatwright v. Boatwright, 155 So.3d 777 (Miss.Ct.App.2011)., On, appeal, ,this Court reversed and remanded because, Judge Alderson admittedly had not reviewed the record, but simply deflected the matter to the appellate court to. make a decision. Id. at 779-80 (¶ 13). The Court directed the chancellor to review the record and render a decision. Id On remand, Judge Aider-son immediately recused. Judge Robert L. Lancaster was appointed. He reviewed the record and denied Toulman’s motion. Toulman now appeals a second time.
¶ 5. The facts and procedural history were set out in this Court’s first opinion and are restated here.
On May 12, 2004, Judge Edwin Roberts of the Marshall County Chancery Court granted Grace Bonds Boatwright and Toulman D. Boatwright Jr. a divorce on the ground of irreconcilable differences. Grace was awarded primary physical custody of the couple’s three minor children, Wynne, Hannah, and Dunn. Toulman was ordered to pay $320 per month in child support, as well-as $80 per month for health insurance, one-half of the out-of-pocket medical expenses, and a portion of the children’s school tuition. Toulman was also ordered to maintain a life-insurance policy with the three children as beneficiaries.
*956 Since the divorce decree, the relationship between Grace and Toulman has deteriorated such that the parties have been unwilling to communicate, resulting in the filing of numerous motions and petitions over the years.
The instant case stems from a petition for contempt and modification filed by Grace on October 19, 2007. An agreed temporary order was entered that, among other things, gave Toulman additional visitation with Hannah and appointed Jennifer Shackelford as guardian ad litem (GAL) for the children. On May 20, 2008, Grace filed a motion for emergency relief alleging that recordings between Toulman and Hannah, who was sixteen years old at the time, evidenced that Toulman’s visitation -with his minor children should be restricted. These recordings indicate a desire on Toulmaris behalf and a willingness on Hannah’s behalf that Hannah engage in violent activities against Grace and her older sister, Wynne. Judge Roberts subsequently suspended Toulmaris visitation with Dunn, who was approximately five years old at that time. The day after Grace filed her motion for emergency relief, L. Anne Jackson, Toul-maris counsel since November 2007, filed a motion to withdraw as counsel. On May 23, 2008, Helen Kennedy Robinson was substituted as Toulmaris counsel.
At some point after this, Hannah went to live with her paternal grandparents. Per Toulmaris request, Judge Roberts entered a temporary order allowing Toulman to pay Hannah’s portion of his child-support payment to the paternal grandparents.
On October 6, 2008, Toulman filed a motion for Judge Roberts to recuse. In response, Grace filed a counter-motion for sanctions. After a hearing on the matter, Judge Roberts took the matter under advisement. On October 28, 2008, Judge Roberts denied Toulmaris motion to recuse, delivering a lengthy opinion in which he found that Toulman was unable to substantiate any of the allegations made in support of his motion. It was determined that Grace’s motion for sanctions would be heard at a later date. Toulman subsequently filed a petition with the Mississippi Supreme Court to review the denial of his motion to re-cuse. The supreme court denied Toul-maris petition by order dated December 10, 2008.
A hearing on the merits of all pending motions and petitions was held for three days in mid-February 2009. Judge Roberts heard Grace’s motion for sanctions on March 10, 2009, and ultimately awarded Grace $4,305 in attorneys’ fees and $733.11 in expenses. Toulman was also ordered to pay $900 to Shackelford, the GAL, for a total of $5,938.11. The order imposing sanctions was executed on April 14, 2009, nunc pro tunc to March 10,2009.
In regard to the original petition for contempt and modification filed by Grace, Judge Roberts found Toulman to be in contempt and ordered him to pay a fine for each instance of contempt. Judge Roberts also ordered Toulman to pay Grace’s attorneys’ fees in regard to the contempt proceeding, but he further directed a writ of inquiry to determine the amount of attorneys’ fees attributed to the contempt action. Judge Roberts further found that it was in Hannah’s best interest to remain living with her paternal grandparents until the end of the school year. Judge Roberts also set visitation, ordered the parties to attend counseling sessions, and modified the child support. This order was executed on April 9, 2009, nunc pro tunc to March 10, 2009. However, Judge Roberts de *957 termined that issues regarding Hannah and’ her custody, visitation, and support were temporary and would be reviewed on August 14, 2009.
On the morning of April 9, 2009, the parties presented for the scheduled writ of inquiry regarding attorneys’ fees. Toulman’s attorney, Robinson, requested a conference in chambers, wherein she informed Judge Roberts that she had received information which required her to file another motion to recuse. The issue of attorneys’ fees was never resolved. On April 16,2009, Judge Roberts granted Toulman’s motion to file a sealed motion to recuse. That same day, Toulman filed a motion to alter or amend or for a new trial based on newly discovered evidence. Robinson had discovered that Judge Roberts had gone turkey hunting with one of Grace’s attorneys, Kent Smith, on April 8, 2009. Grace’s other attorney is Kent Smith’s wife, Amanda Whaley Smith.
On April 20, 2009, Judge Roberts, on his own motion, recused himself from the case. The case was then assigned to Judge Glenn Alderson, who conducted a hearing.on Toulman’s .motion for a new trial. Judge Alderson decided that rather than conduct a new trial on the merits, the most economical decision would be for the parties to appeal and allow the appellate court to determine whether there was any wrongdoing. Judge Alderson ultimately denied the motion.
Boatwright, 155 So.3d at 777-79 (¶¶ 2-10).
¶ 6. On remand, Judge Lancaster, the third judge in this matter, considered the issues raised in Toulman’s motion for -a new trial and/or to alter or amend orders entered by Judge Roberts. Toulman’s motion argued that newly discovered evidence — the turkey hunt — revealed bias on the behalf of Judge Roberts and necessitated a new trial. The motion requested the two orders entered after the turkey hunt but prior to Judge Roberts’s recusal be vacated. The two orders entered after the turkey hunt and prior to the recusal are: (1) the April 9, 2009 order finding Toulman ;jn contempt and fining him $1,000; and (2) the April 14, 2009 order sanctioning Toulman and his attorney in the amount of $5,938.11 for filing the initial motion to recuse. Both orders were signed nunc pro tunc to March 10, 2009, the day the .motions were heard. Toulman alternatively argued that if his motion for a new trial was denied, the following judgments against him should be altered or amended: the award of sanctions, the finding of willful contempt, the order to attend counseling. sessions, the award of attor-néys’ fees for contempt, and the order of child support.
¶ 7. On June 26, 2013, Judge Lancaster denied the motion for a new trial and/or to alter or amend, with the exception of the fine of $1,000, which he vacated. In altering the April 9, 2009 judgment to omit the $1,000 civil-contempt fine, Judge Lancaster took issue not with the fine itself, but that Judge Roberts had ordéred the fine to be payable to the county. Judge Lancaster found that this was inappropriate, stating that a fine payable to the county “is a punishment for criminal contempt and not shown to be a means to coerce compliance under civil contempt.” As to Toulman’s argument for a new trial based on Judge Roberts’s bias, Judge Lancaster found no evidence of bias against Toulman or his counsel. Judge Lancaster held that the sporadic social relationship between the chancellor 'and Smith would not cause an objective, fully informed person to doubt the chancellor’s impartiality. On December 16, 2013, Judge Lancaster entered a final judgment on the “remaining issue to conclude this litigation.” The remaining issue was the motion for attorneys’ fees for *958 contempt. The chancellor ordered Toul-man to pay $2,100 toward Grace’s attorneys’ fees. Toulman appealed.
¶ 8. Toulman raises three issues on appeal: (1) Judge Lancaster erred in denying his motion for a new trial since Judge Roberts' should have initially recused in this matter; (2) Judge Lancaster erred in finding that Judge Roberts properly imposed sanctions for Toulman’s initial motion to recuse; and (3) Judge Roberts’s rulings should be reversed due to bias.
STANDARD OF REVIEW
¶ 9. Our review of a chancellor’s decision is 'limited. Ballard v. Commercial Bank of DeKalb, 991 So.2d 1201, 1204-05 (¶ 13) (Miss.2008). This Court will not disturb the chancellor’s findings unless those findings are manifestly wrong or clearly erroneous, or the chancellor applied an incorrect legal standard. Id. at 1205 (1113). Where the chancellor’s findings are supported by substantial evidence, this Court is without authority to disturb his or her conclusions, although this Court might have found otherwise as an original matter. Id. The standard of review for the grant or denial of a new trial is abuse of discretion. Barriffe v. Estate of Nelson, 153 So.3d 613, 618 (¶ 22) (Miss.2014). When deciding-whether to grant a new trial, chancellors are “given great deference.” Id. Because of “the important corrective role of new-trial motions,” this deference is “exceedingly broad.” Id.
ANALYSIS
I. DENIAL OF MOTION FOR A NEW TRIAL
¶ 10. Toulman argues he is entitled to a new trial based on Judge Roberts’s refusal to recuse-himself from this matter, upon Toulman’s request in October 2008. Toulman argues that the April 2009 turkey hunt brought to light preexisting bias, and that all unfavorable rulings against him— pre- and post-turkey hunt — should be reversed for a new trial before an impartial chancellor.
¶ 11. Toulman’s October 6, 2008 recusal motion was based on statements and rulings made by Judge Roberts, which counsel states were “derogatory”-and gave her the impression that Judge Roberts was “totally fed up and disgusted with” Toul-man. In his brief, Toulman states that at the time the 2008 recusal motion was filed, he “was -quite aware of the Chancellor’s bias, but he did not know the reason for any bias.” It was not- until- he and his attorney learned of the April 2009 turkey hunt that they discovered the personal relationship between Judge Roberts and Smith. Toulman asserts that Judge Roberts had a duty to disclose the relationship, and his sua sponte recusal after the matter was brought'to his attention was “a clear admission” of the error.
¶ 12. Under the Code of Judicial Conduct, a judge must grant a motion to recuse or disqualify when that judge’s “impartiality might be questioned by a reasonable person knowing all the circumstances ..., including but not limited to instances where ... the judge has a personal bias or prejudice concerning a party[.]” Code of Judicial Conduct, Canon 3(E)(1)(a); see also UCCR 1.11. Though a judge is presumed to be qualified and unbiased, a judge must recuse when a reasonable person aware of all the circumstances would doubt the judge’s impartiality. Collins v. Joshi 611 So.2d 898, 901 (Miss.1992). “The obligation to maintain impartiality is a general standard, and if a reasonable person would question a judge’s impartiality, disqualification is required, even if a specific provision of the Code does not require, disqualification.” Jackson &. Campbell, Commentary on Judicial Eth *959 ics in Mississippi § 6:1 (2010) (citing Code of Judicial Conduct, Canon 3(E) commentary); see also Buchanan, v. Buchanan, 587 So.2d 892, 896 (Miss.1991).
¶ 13.' The social relationship between Judge Roberts and Smith was limited to turkey hunts on the. attorney’s land. Smith testified these turkey hunts occurred on one to three occasions in 2005-06; on one to three occasions in 2007; and once in 2009, on April 8. So, between 2005 and 2009, the two hunted together between three and seven times. There was no other reported interaction. Smith testified that he and Judge Roberts did not discuss the Boatwrights’ case- while hunting. Smith also testified that he initially appeared in the case in 2004 when the' parties’ assets were being divided. However, the matter settled, and he did not appear again as counsel until February 2009. The current matter stems from Grace’s petition for contempt and modification filed on October 19, 2007.
¶ 14. On careful and thorough review of the eight-volume record in this matter, Judge Lancaster found no appearance of impartiality on behalf of Judge Roberts. Specifically, he found that “an objective, disinterested observer, fully informed of the facts would [not] entertain significant doubt that justice would be or has not been done in this' case.” Judge Lancaster reviewed the social relationship under the Code of Judicial Conduct and cited approximately a dozen Mississippi cases discussing the objective-reasonable-person standard, which he stated he considered in reaching his decision. We find that Judge Lancaster’s finding is consistent with “[t]he general rule ... .that mere social acquaintance alone does not automatically create an appearance of impropriety.” Jackson & Campbell, Commentary on Judicial Ethics in Mississippi § 6:15 (2010) (citing Scafide v. Bazzone, 962 So.2d 585, 599 (¶ 49). (Miss.Ct.App.2006)). It is also consistent with this Court’s recent finding that evidence of an attorney and chancellor’s personal relationship, which was disclosed and described as frequently eating lunch and attending sporting events together, was not sufficient to require the judge’s recusal. In re Guardianship of McClinton, 157 So.3d 862, 872 (¶¶ 24-25) (Miss.Ct.App.2015).
¶ 15. Judge Lancaster’s opinion on recusal was addressed to the original recusal.,motion. . He found no reasonable doubt existed, .as to Judge Roberts’s impartiality. . That ruling, as to the earlier recusal motion filed on. October 6, 2008, is affirmed. However, we .note here, as Judge Roberts did by his sua sponte recu-sal, accepting an invitation to a turkey hunt with one of the lawyers in this matter while the case was ongoing caused the appearance of Judge Roberts’s impartiality to come into question. The mere fact that a judge has social contact with lawyers is not the issue' and is not the basis for á recusal. However,' accepting such a unilateral- invitation while in the process of sitting in a contested matter is problematic and should be avoided. Judges are human. Judge Roberts accepted an invitation he should have declined. The issue was brought1 to bis attention, and he properly recused himself. The better practice would have been to refuse that invitation. But Judge Roberts corrected his own mistake by recusing himself, thus removing any appearance of impropriety or lack of impartiality.
¶ 16. While agreeing that Judge Roberts erred by going on the turkey hunt, the dissent goes further, finding that Judge Roberts should have recused earlier in the proceedings based on the pretrial social relationship. - The dissent finds that Judge Lancaster applied an incorrect stan *960 dard in denying the motion for a new trial. Specifically, the dissent finds that Judge Lancaster only considered whether “actual” bias existed on behalf of Judge Roberts, and that he failed to consider the lesser standard required by our law— whether an “appearance” of bias existed. The dissent also states that Judge Lancaster incorrectly focused on the April 2009 turkey hunt “in isolation from other circumstances,” instead of considering the “totality of the circumstances.” We do not find either to be the case. Judge Lancaster’s order addresses the relationship, spanning back to 2005. It specifically states that “[t]here was no proof of a social relationship other than these [three to seven] occasions of turkey hunting together.” And it states that the 2007 hunting trips were “all before the subject trial occurred.” His findings further state that the 2009 hunt occurred “after the subject trial was completed and the final decision made” (with the exception of the decision on the amount of the award of attorneys’ fees for contempt, which was ultimately decided by Judge Lancaster). The standard used by Judge Lancaster in reviewing this matter was whether a reasonable person knowing the circumstances would have reasonable doubt as to Judge Roberts’s impartiality. - Specifically, Judge Lancaster stated he considered whether “an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be or has not been done in this case.” One of the cases cited by Judge Lancaster for this standard is the same used by the dissent in support of its argument, Jenkins v. Forrest County General Hospital, 542 So.2d 1180, 1181 (Miss.1988). We find that Judge Lancaster considered the totality of the circumstances, and that he correctly applied the law.
¶ 17. We now address the two orders entered by Judge Roberts after he accepted the invitation to hunt with Smith — a situation necessitating his recu-sal — but prior to his actual recusal. The hunt was on April 8, the hearing was scheduled for April 9 (Judge Roberts continued the hearing after discussion of the turkey hunt), and Judge Roberts’s sua sponte recusal order was entered on April 20. Between April 8 and April 20, Judge Roberts entered two orders, both nunc pro tunc to March 10. Toulman argues these two orders should be vacated. A judge who has recused has no authority to make rulings in the case. Miss. Comm’n on Judicial Performance v. Skinner, 119 So.3d 294, 300 (¶ 11) (Miss.2013). Although the two orders were entered before Judge Roberts’s recusal, the need for recu-sal had risen, so we find the same principle applies. A judge, having become aware of a need to recuse, should not make subsequent rulings in that matter. However, in this instance, the two orders in question, signed on April 9 and 14, were not new rulings addressing matters that arose after Judge Roberts accepted the invitation to go on a turkey hunt. The two orders entered by Judge Roberts simply reduced to writing findings and orders made by the court at the March 10, 2009 hearing. The orders were signed “nunc pro tunc” to March 10, 2009, and were consistent with Judge Roberts’s oral rulings announced on March 10.
¶ 18. A similar situation was recently addressed by our supreme court in Barnes v. Jefferson Davis County School District, 160 So.3d 1149, 1153-54 (¶¶ 20-22) (Miss.2015). In Barnes, the appellant filed an interlocutory appeal, arguing that the trial judge improperly- ruled in a case from which he had recused. The supreme court found no error was committed- since the trial judge’s order only memorialized prior *961 rulings he had made from the bench. The supreme court reasoned as follows:
The only “ruling” issued by the trial judge after his recusal was an order memorializing the rulings he previously had made from the bench; he did not rule on the sanctions issue or other additional issues. And importantly, our rules require the trial court to enter such an order. See [M.R.C.P.] 58 (“Every judgment shall be set forth on a separate document.”) (emphasis added); [M.R.C.P.] 54(a) (“ ‘Judgment’ as used in these rules includes any order from which an appeal lies.”). See also Banks v. Banks, 511 So.2d 933, 934 (Miss.1987). As such, we find that the trial judge did not “rule” on anything, after he had re-cused himself from the case going forward.
Barnes, 160 So.3d at 1154 (¶ 22).
¶19. We find Judge Roberts did not err by entering the April 9 and 14 orders, nunc pro tunc to March 10, 2009, as he made no rulings after the need for recusal arose. See id. When the March 10, 2009 rulings were made, Judge Roberts had no basis for recusal. As stated in Barnes, Judge Roberts was required by law to enter an order on the prior March 10 rulings. See id. The dissent argues that Barnes is inapplicable because it addresses a judge’s recusal from a second trial based on knowledge gained from the first trial, while the instant matter pertains to recu-sal based on extrajudicial activities. We find this distinction immaterial. In both cases, the need for recusal arose during the course of the proceedings, and both judges entered orders memorializing findings made before the need for recusal had arisen. We find the principle applied by the supreme court in Barnes applicable here. Judge Roberts did not err in entering the orders memorializing his prior rulings, which were made before the need for recusal occurred.
¶20, Giving great deference to Judge Lancaster’s findings, as is required by our standard of review, we find he did not abuse his discretion in denying the motion for a new trial. Judge Lancaster thoroughly considered Toulman’s motion for a new trial and issued a well-reasoned opinion. Judge Lancaster’s decision specifically states that he reviewed the entire eight-volume transcript of the previous hearings relevant to the motion for a new trial, as well as the record on the initial hearing on the motion for a new trial. He reviewed the initial appellate briefs of each party and the record of the pleadings prepared for the first appeal. He reviewed the April 9 and 14 orders entered after the turkey' hunt and found they were supported by the evidence, with the exception of the April 9 fine of $1,000, which he vacated. Judge Lancaster’s decision was supported by the evidence, and he did not abuse his discretion in denying the motion for a new trial.
II. SANCTIONS
¶ 21. Toulman next argues that Judge Roberts’s award of sanctions for 'his filing the 2008 motion to recuse was error, as evidenced by the later-discovered social relationship between Judge Roberts and Smith, which began in 2005.
¶22. “The decision to award monetary sanctions is left to the discretion of the trial court,” and is reviewed for abuse of discretion. Hampton v. Blackmon, 145 So.3d 632, 634 (¶ 7) (Miss.2014). “In the absence of a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors, the judgment of the court’s imposition of sanctions will be affirmed.” Id. A court shall award “reasonable attorney’s *962 fees and costs” if it “finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment[.]” Miss.Code Ann. § 11-65-5 (Rev.2012); see also M.R.C.P. 11. “A claim is frivolous whén the claimant has no hope of success.” McNeese v. McNeese, 129 So.3d 125, 131 (¶ 16) (Miss.2013).
¶23. Judge Lancaster reviewed the award of sanctions and found it to be proper. He cited to Judge Roberts’s reasoning for awarding the $5,938.11 in sanctions in the April 14 order, nunc pro tunc to March 10, 2009. Judge Roberts awarded sanctions because Toulman admitted that allegations in his first motion to re-cuse and attached affidavit were false or beyond his, knowledge. For example, Toulman alleged that prior to hearings in this matter, the chancellor had gone into chambers ex parte with Grace, her brother, ,and her attorney. Toulman later admitted that he never saw Grace or her brother go into chambers with the judge. Further, the chancellor found that arguments made by Toulman’s counsel were without basis, and appeared to have been made due to her lack of knowledge of prior proceedings in the case. Toulman’s counsel later admitted to not having read the first transcript from the prior proceeding before filing the motion. Judge Roberts’s finding that' Toulman’s motion for recusal was without substantial justification is supported by the evidence. We find Judge Lancaster did not abuse his discretion in denying the motion to alter or amend the award of sanctions.
III. ALLEGED BIAS
¶24.' Under this assignment of error, Toulman gives examples of rulings by Judge Roberts in the underlying matter, which Toulman asserts indicate bias. Toulman requests a new trial before an impartial chancellor. He also argues Judge Lancaster reviewed the bias allegations under' an incorrect legal' standard.
¶ 25. As discussed, Judge Lancaster reviewed Judge Roberts’s prior findings and found them supported by the evidence. He also found no appearance of bias on behalf of-Judge Roberts, and,no basis for granting a new trial. We cannot find Judge Lancaster, abused his discretion in doing so. Therefore we find no merit to this .issue and affirm..
¶ 26. THE JUDGMENT OF THE MARSHALL COUNTY CHANCERY COURT IS AFFIRMED; ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., AND ISHEE, J., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND IRVING, P.J. BARNES, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., NOT PARTICIPATING/

. Five of the judges currently serving on this Court recused themselves from participation in this case, leaving five judges to review the appeal, The recused judges are: Judge Donna M. Barnes, Judge Larry E. Roberts, Judge James D. Maxwell II, Judge Eugene L. Fair Jr., and Judge Ceola James. Because a quorum of six judges is required to reach a decision, this Court requested Mississippi Supreme Court Chief Justice William L. Waller Jr, to appoint a special judge to participate in the decision of this appeal. The request was granted by the supreme court in an order signed and entered by Chief Justice Waller on February 19, 2015. Pursuant to Mississippi Code Annotated section 9-1-Í05 (Rev.2014), Chief Justice Waller appointed Senior Status Judge Hollis McGehee to serve as special judge for the limited purpose of participating in the consideration and decision of this case, including any motion for rehearing.