# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00148-COA

**JUSTIN PETERSON A/K/A JUSTIN DALE PETERSON A/K/A JUSTIN D. PETERSON**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:                   12/26/2014
TRIAL JUDGE:                        HON. PRENTISS GREENE HARRELL
COURT FROM WHICH APPEALED:          PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:             JUSTIN PETERSON (PRO SE)
ATTORNEY FOR APPELLEE:              OFFICE OF THE ATTORNEY GENERAL
                                    BY: BILLY L. GORE

NATURE OF THE CASE:                 CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                        AFFIRMED: 07/31/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     Justin Peterson pled guilty to armed robbery and was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, with twenty years to serve and five years' post-release supervision. Peterson timely filed a motion for post-conviction relief claiming his plea was involuntary because his defense attorney had guaranteed he would be sentenced to only eight years if he pled guilty. In support, Peterson attached affidavits from himself, his mother, and his aunt to that effect. The circuit court gave Peterson an evidentiary hearing on his PCR motion, but at the hearing Peterson admitted that he had known eight years was only a recommendation and that his sentence would be up to the

court. The circuit court denied Peterson's PCR motion, and on appeal we affirm that court's judgment.[1]

## STANDARD OF REVIEW

¶2. "When reviewing a trial court's denial or dismissal of a motion for PCR, we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review legal conclusions under a de novo standard of review." *Chapman v. State*, 167 So. 3d 1170, 1172 (¶3) (Miss. 2015). A PCR movant bears the burden of showing he is entitled to relief by a preponderance of the evidence. *Wilkerson v. State*, 89 So. 3d 610, 613 (¶7) (Miss. Ct. App. 2011).

## DISCUSSION

### 1. Guilty Plea

¶3. Peterson claims that his attorney "guaranteed" he would only be sentenced to eight years. Peterson contends he would not have pled guilty had he known his sentence could be longer.

¶4. When determining the voluntariness of a guilty plea, "[a]n appellate court will not set aside findings of a trial court sitting without a jury unless such findings are clearly

---

[1] Approximately one month after filing his notice of appeal, Peterson moved to suspend the appeal deadline. He alleged that the circuit court had appointed an attorney to represent him at the evidentiary hearing on his PCR motion, and the attorney neglected to file a timely appeal. This Court ordered that Peterson's motion would be considered with the merits of his appeal. In its brief, the State says that it does not "contest Peterson's right to an out-of-time appeal . . . ." Thus, Peterson's motion to suspend the appeal deadline is granted.

2

erroneous." *Walton v. State*, 16 So. 3d 66, 70 (¶8) (Miss. Ct. App. 2009). "The burden of proving a guilty plea is involuntary is on the defendant and must be proven by a preponderance of the evidence." *Id*. "To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea." *Burrough v. State*, 9 So. 3d 368, 373 (¶11) (Miss. 2009).

¶5.     In his PCR motion, Peterson claimed his attorney "improperly induced a guilty plea by his assurances that if Peterson pled guilty to the offense, the court would follow the State's recommendation and impose a sentence of no more than [eight] years, to serve." Interestingly, Peterson recanted this statement at the evidentiary hearing. When asked whether he was promised eight years, Peterson said "there were no promises." He also admitted he understood an eight-year sentence was not "concrete," but rather a recommendation the assistant district attorney was "pushing for" in exchange for his guilty plea.

¶6.     Peterson's mother likewise recanted her affidavit from the witness stand. While her affidavit claimed that her son's attorney "assured" that the court would impose a sentence of eight years, her live testimony revealed that she understood an eight-year sentence was only a recommendation.

¶7.     Further, during the plea colloquy the circuit court fully informed Peterson of the maximum sentence he could receive. And Peterson acknowledged that he understood that

he could get up to life imprisonment for armed robbery and that the circuit judge would make the final decision on his sentence.

¶8.   We can find no error in the circuit court's finding that Peterson's guilty plea was voluntary.

### 2.   Ineffective Assistance of Counsel

¶9.   Peterson next claims that the court erred in not applying the two-part test found in *Strickland* for his ineffective-assistance-of-counsel claim.  Under *Strickland*, the defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689.

¶10.   Peterson claimed that his attorney was ineffective because he "improperly induced" a guilty plea.  In his order denying Peterson's PCR motion, the circuit judge considered the two claims together, since they were interrelated.  The court held that, since Peterson failed to show that his attorney "guaranteed" an eight-year sentence (the alleged deficiency), his ineffective-assistance-of-counsel claim must also fail.  Although the judge's order did not specifically refer to the *Strickland* test, he clearly applied it.  We find no error in this ruling.

### 3.   Ex Parte Communications

¶11.   For the first time on appeal, Peterson claims that the trial judge engaged in ex parte communications before the sentencing hearing in 2012 and before the evidentiary hearing in 2014.  The first allegation is procedurally barred because Peterson failed to raise it in his

4

PCR motion. *See Fluker v. State*, 17 So. 3d 181, 183 (¶5) (Miss. Ct. App. 2009) (stating that "[a petitioner] who fails to raise an issue in his [PCR] motion . . . may not raise that issue for the first time on appeal").

¶12. For the second allegation, Peterson claims that his trial court attorney engaged in ex parte communications with the trial judge prior to the evidentiary hearing on his PCR motion. He attaches a copy of a letter from his trial court attorney to his brief on appeal, which details an alleged meeting between himself, the judge, *and* Assistant District Attorney Cranford. This letter was not part of the circuit court record or the record on appeal. In fact, the record contains no evidence whatsoever of any such communications.

¶13. On June 19, 2017, this Court denied Peterson's motion to enter documents under seal, including Peterson's complaint filed with the Mississippi Judicial Performance Commission on this exact issue. We denied Peterson's motion because the documents were not part of the circuit court record. Likewise, the letter attached to Peterson's brief is not part of the record and cannot be considered. *See, e.g.*, *Harris v. State*, 224 So. 3d 76, 83 (¶30) (Miss. 2017); *Hampton v. State*, 148 So. 3d 992, 995-96 (¶¶6-8) (Miss. 2014); *Stone v. State*, 94 So. 3d 1078, 1082 (¶11) (Miss. 2012). Therefore, any claim of ex parte communications based on the allegations and arguments in Peterson's pro se brief are unsupported by any evidence in the appellate record and cannot be addressed on appeal.

¶14. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, WILSON, GREENLEE AND TINDELL, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH**

5

**SEPARATE WRITTEN OPINION, JOINED BY CARLTON, J.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶15.    I concur that the letter is not a part of the record and, therefore, is not properly before this Court.  However, I write separately in the hopes that Peterson can address the concerns regarding the letter attached in a subsequent PCR motion.  From the record, we do know that the State made a request to issue witness subpoenas yet did not call any witnesses for the 2014 PCR evidentiary hearing.  While the State has the right to release its own witnesses, the manner in which Howell was released seems to be exclusive and not transparent.

¶16.    It appears from the letter attached to the appellant's brief that prior to his PCR evidentiary hearing the trial judge engaged in ex parte communications with a fact witness, John Howell, and the State.[2]  In the letter Howell reveals that the conference took place without the knowledge of Peterson or his counsel, T.K. Byrnes.  In discussing ex parte matters, this Court has held that "[t]he issue is not wrongdoing . . . but rather the potential for such and the appearance of bias to the general public." *Boatwright v. Boatwright*, 184 So. 3d 952, 966 (¶40) (Miss. Ct. App. 2015); *see generally Jenkins v. Forrest Cty. Gen. Hosp.*, 542 So. 2d 1180, 1181 (Miss. 1988).  Furthermore, "[a]ll that is required is for the

---

[2] Howell represented Peterson in 2012 during his plea and sentencing.  In 2014, prior to the PCR hearing, the State subpoenaed Howell as a witness.  However, during a meeting in chambers, he was released and did not testify.  In 2017, in response to an inquiry made by Peterson, Howell wrote a letter acknowledging the meeting in chambers.  The majority refers to the ex parte communication as an "alleged meeting," but, I see no purpose in suggesting Howell fabricating that occurrence.

totality of the evidence, circumstances, and resulting inferences to objectively raise reasonable doubt as the impartiality of a judge." *Boatwright*, 184 So. 3d at 968 (¶45).

¶17. Here, reasonable doubt could be raised as to the court's impartiality toward Peterson since the trial judge seemingly engaged in an ex parte discussion with a fact witness without Peterson's knowledge. Additionally, Howell explains that in the chambers meeting, he told the court he did not want to testify because he was invoking the attorney-client privilege. However, precedent reflects that such privilege belongs to the client and not to counsel.

¶18. Most importantly, the trial court failed to place on the record a transcript or even a summary of that ex parte meeting with Howell. Perhaps at a later date, Peterson should be allowed the opportunity to discover what communications were disclosed to the trial judge during the ex parte meeting on the record. In *Bracy v. Gramley*, 520 U.S. 899, 909 (1997), the United States Supreme Court held that even if a petitioner was "unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case" with a "sufficient showing" he may "establish 'good cause' for discovery." As mentioned, I do not contend that a party cannot release its own witnesses. However, once the court requested the parties to come into chambers for the purpose of discussing matters relative to the hearing, it was incumbent upon the court to guarantee impartiality by ensuring that all parties were present for all substantive portions of the PCR hearing.

 **CARLTON, J.**, **JOINS THIS OPINION.**