# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00648-COA

**JUSTIN PETERSON A/K/A JUSTIN DALE PETERSON A/K/A JUSTIN D. PETERSON**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:               05/27/2020
TRIAL JUDGE:                    HON. CLAIBORNE McDONALD
COURT FROM WHICH APPEALED:      PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         JUSTIN PETERSON (PRO SE)
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: ZAKIA HELEN ANNYCE BUTLER
NATURE OF THE CASE:             CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                    AFFIRMED - 09/28/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     Justin Peterson, appearing pro se, appeals the Pearl River County Circuit Court's denial of his third motion for post-conviction relief (PCR). Peterson alleged that the trial court judge made improper ex parte communications before his sentencing hearing and an evidentiary hearing. The circuit court found Peterson's motion procedurally barred as successive and untimely. Further, Peterson's ex-parte-communication contentions were found to be without merit. Finding no error, we affirm the circuit court's judgment.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     In September 2011, Peterson was indicted for the armed robbery of Smoking Joe's

Tobacco Store near Picayune, Mississippi. On March 5, 2012, Peterson pleaded guilty. The sentencing judge ordered a presentence investigation, and a sentencing hearing was held on March 12, 2012. Peterson was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, with twenty years to serve and five years of post-release supervision.

¶3. On March 3, 2014, Peterson filed his first PCR motion. He argued that his guilty plea was involuntary and that his counsel was ineffective because Peterson had been improperly induced to plead guilty by his former attorney, John Howell;[1] Peterson claimed Howell guaranteed that Peterson would only be sentenced to eight years if he pleaded guilty. In support of this contention, Peterson attached affidavits from himself, his mother, and his aunt. Relatedly, he also claimed he was serving a disproportionate sentence.

¶4. On December 2, 2014, the circuit court held an evidentiary hearing on Peterson's PCR motion and the contentions in the affidavits. Peterson was represented by new counsel—T. K. Byrne. At the hearing, Peterson and his mother negated the statements in their affidavits, admitting that they understood the eight-year sentence was only a recommendation by the State—not a guarantee—and that his sentence was up to the court. On December 26, 2014, the circuit court denied Peterson's PCR motion, finding his arguments were without merit.

¶5. Peterson appealed, and this Court affirmed the circuit court's denial in *Peterson v. State*, 262 So. 3d 1167, 1169 (¶1) (Miss. Ct. App. 2018) (*Peterson I*). On appeal, Peterson

---

[1] Howell represented Peterson in 2012 during his plea and sentencing.

raised for the first time a claim that the trial judge engaged in ex parte communications before his sentencing hearing on March 12, 2012, as well as the evidentiary hearing. *Id.* at 1170 (¶11). This Court found the sentencing-hearing claim was procedurally barred because Peterson failed to raise it in his PCR motion. *Id.* For the evidentiary-hearing claim, Peterson attached to his appellate brief a copy of a letter dated February 21, 2017, from his trial court attorney, Howell, which detailed the meeting among Howell, the judge, and the district attorney.[2] *Id.* at (¶12). Because this letter was not a part of that record, we found it could not be considered, and any claim of ex parte communication at this hearing was unsupported. *Id.* at (¶13). Judge Westbrooks, however, authored a separate opinion suggesting Peterson could "address the concerns regarding the letter . . . in a subsequent PCR motion." *Id.* at 1170-71 (¶15) (Westbrooks, J., specially concurring). She stated that it appeared from Howell's letter that the trial judge engaged in ex parte communication with Howell and the State without the knowledge of Peterson or his new counsel.[3] *Id.* at 1171 (¶16).

¶6.     On March 3, 2017, while the appeal of the denial of Peterson's first PCR motion was

_____

[2] In February 2017, Howell wrote the letter in response to an inquiry from Peterson about what was discussed during a meeting in chambers among Howell, the judge, and the district attorney before his evidentiary hearing on December 2, 2014. This inquiry and letter is a part of this record.

[3] In the letter, Howell admitted that before the evidentiary hearing, he went into the judge's chambers with the judge and district attorney before Peterson's new counsel, Byrne, had arrived. Howell explained that he had been subpoenaed to testify but told the judge he objected to testifying because of the attorney-client privilege. The judge agreed with his objection and released him. Howell stated that no further business related to Peterson's hearing or case was discussed.

pending, he filed a second PCR motion in the circuit court, almost five years after pleading guilty to armed robbery. He argued the circuit court lacked jurisdiction to impose his conviction and sentence; he was sentenced without due process because his guilty plea was never accepted; the absence of the pre-sentencing investigation report violated his due process rights; and ex parte communications during his sentencing hearing violated the Mississippi Code of Judicial Conduct and his right to confront witnesses against him.[4] Peterson also filed a motion for recusal of the original sentencing judge, which was granted. On February 25, 2019, in a detailed eleven-page order, the circuit court denied Peterson's second PCR motion, finding it both time-barred and barred as a successive motion; further, the court found his arguments were without merit. Peterson again appealed, and this Court affirmed the circuit court's denial in *Peterson v. State*, 301 So. 3d 724, 726 (¶9) (Miss. Ct. App. 2020) (*Peterson II*).

¶7.     While Peterson's second PCR was on appeal, he filed his third PCR motion, the subject of the current appeal. He stated the motion was "prompted" by Judge Westbrooks's specially concurring opinion in *Peterson I*. Peterson argued that because of the ex parte communications at his sentencing and evidentiary hearings, his due process rights were violated. The circuit court reserved ruling on Peterson's third PCR motion until this Court entered its final decision on his second PCR motion in *Peterson II*, which was issued on April 28, 2020.

¶8.     On May 27, 2020, in another detailed opinion, the circuit court denied Peterson's

---

[4] Peterson claims the trial judge spoke to the victims of the armed robbery in chambers before sentencing, without Peterson or his counsel present.

third PCR motion, finding it time-barred and successive and any statutory or fundamental-rights exceptions inapplicable. The circuit court also found that both of Peterson's ex parte communication allegations were without merit. Aggrieved, Peterson appealed.

## STANDARD OF REVIEW

¶9. This Court reviews a circuit court's denial or dismissal of a PCR motion for an abuse of discretion. *Purvis v. State*, 240 So. 3d 468, 470 (¶7) (Miss. Ct. App. 2017). A trial court's denial or dismissal of a PCR motion will only be disturbed if the trial court's findings are clearly erroneous. *Id.* Questions of law are reviewed de novo. *Id.*

## ANALYSIS

¶10. Peterson argues his third PCR motion was not procedurally barred and that his due process rights were violated by ex parte communications at his sentencing and first PCR's evidentiary hearing. We shall discuss each argument in turn.

### I. Procedural Bars

¶11. The circuit court found Peterson's motion procedurally barred by time and as a successive motion. The Uniform Post-Conviction Collateral Relief Act (UPCCRA) provides that a PCR motion challenging a guilty plea must be filed within three years of the entry of the judgment of conviction. Miss. Code Ann. § 99-39-5(2) (Rev. 2020). Peterson's third PCR motion was filed approximately seven years after his guilty plea, well past the three year statute of limitations.

¶12. Additionally, any order denying or dismissing a PCR motion bars a second or successive motion. Miss. Code Ann. § 99-39-23(6) (Rev. 2020). "The movant bears the

burden of 'proving by a preponderance of the evidence that his claims are not barred as successive writs.'" *Williams v. State*, 110 So. 3d 840, 843 (¶13) (Miss. Ct. App. 2013) (quoting *Robinson v. State*, 19 So. 3d 140, 144 (¶16) (Miss. Ct. App. 2009)). Peterson's first PCR motion was filed in 2014, and his second PCR motion was filed in March 2017. This Court has affirmed the circuit court's denial of both motions in *Peterson I* and *Peterson II*. Further, Peterson has failed to prove that his claims are not successive.

¶13. Peterson argues that his denial-of-due-process claims are not barred because ex parte communication, particularly at sentencing, involves fundamental rights excepted from the procedural bars. Peterson is correct that "errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA." *Rowland v. State*, 42 So. 3d 503, 506 (¶9) (Miss. 2010). However, "mere assertions of constitutional-rights violations do not suffice to overcome the procedural bar." *White v. State*, 59 So. 3d 633, 636 (¶11) (Miss. Ct. App. 2011). The denial of due process at sentencing is a right that has been expressly found to be "fundamental" and excepted from the procedural bar. *Salter v. State*, 184 So. 3d 944, 950 (¶22) (Miss. Ct. App. 2015). Here, however, Peterson's ex parte communication contention does not invoke this exception. Even if it did, his argument has no merit, as will be discussed in the next issue. Therefore, the circuit court did not err in finding Peterson's PCR motion procedurally barred.

## II. Ex Parte Communications

¶14. Peterson claims his due process rights were violated by ex parte communications at his sentencing and evidentiary hearings. However, the circuit court gave a detailed,

6

thorough analysis of both meetings, finding both claims without merit. The sentencing-hearing claim was addressed in a previous order and appeal and has nothing to do with Howell's letter. Because Peterson makes no new allegations and presents no new evidence, he cannot overcome the procedural bar. Nonetheless, we address the argument below. Regarding the evidentiary-hearing claim, because the third PCR motion was Peterson's first opportunity to raise the issues identified by Judge Westbrooks regarding Howell's letter and what occurred in the meeting before the evidentiary hearing, we shall address the merits of his ex parte claim at the evidentiary hearing.[5]

### A.    Sentencing Hearing

¶15.    Regarding the sentencing hearing, Peterson claims the judge recessed and took the victims, a local business owner and a store clerk, into his chambers, outside the presence of Peterson and his counsel. Peterson claims that after the judge and victims emerged from chambers, the judge took an "upward departure" from the sentence recommended by the State, resulting in a twenty-five-year, rather than eight-year, sentence. Peterson then claims the judge admitted to the improper ex parte meeting on the record at the sentencing hearing when he stated, "The Court has had a conference with two of the victims in this matter."

¶16.    Neither Peterson nor his counsel objected when the court informed Peterson of the meeting. The circuit court found the issue procedurally barred in its February 25, 2019 order denying Peterson's second PCR motion. Peterson makes the same argument as he did in his

---

[5] Peterson's second PCR motion was filed in March 2018, four months before *Peterson I* was published; therefore, Peterson could not address Judge Westbrooks's concerns in that motion, which focused on the ex parte communications at the sentencing hearing.

second PCR motion and cites no additional evidence to support his claim. The circuit court addressed this claim thoroughly in its February 25, 2019 order, finding Peterson knew of the meeting, yet "neither [he] nor his attorney objected on the record at that time." We affirmed the circuit court's decision in *Peterson II*, and we affirm it again here.

## B. Evidentiary Hearing

¶17. Regarding the evidentiary hearing on his first PCR motion, the court found that Peterson "had knowledge and was aware of the meeting between these parties in chambers, and the release of Howell at the time that it happened." This awareness resulted in Peterson's writing to Howell in February 2017 (albeit over two years after the meeting had occurred and the circuit court had denied his first PCR motion) inquiring about what happened at the meeting on December 2, 2014. Howell responded by letter on February 21, 2017, although the letter was not included in the record of Peterson's first PCR motion.[6] Additionally, Peterson's third PCR motion notes his new defense counsel, Byrne, was aware of the meeting. (Howell's letter states Byrne had not yet arrived at the courthouse.) Importantly, the ex parte meeting Peterson complains of led to the release of the State's witness, Howell, who was subpoenaed to testify against Peterson. The transcript of the hearing shows neither Peterson nor Byrne objected to Howell's release as a witness; because Howell was called to testify against Peterson, this release probably benefitted Peterson. Moreover, the denial of Peterson's first PCR motion was not a result of Howell's release

---

[6] The letter's omission in the record and the appearance of impropriety had caused Judge Westbrooks to suggest Peterson file a "subsequent PCR motion" to "address the concerns regarding the letter." *Peterson I*, 262 So. 3d at 1170-71 (¶15).

from the hearing; the court denied relief because Peterson himself admitted that the eight-year sentence was only a recommendation by the State and because the judge could sentence him up to the maximum sentence. Ultimately, the meeting did not prejudice Peterson. Peterson presents no other evidence that the meeting resulted in bias or partiality against him. Thus, the circuit court properly found Peterson's due process rights were not violated by the meeting.

## CONCLUSION

¶18. In conclusion, the circuit court did not err in finding Peterson's ex parte claims were without merit.

¶19. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**