DICKINSON, Presiding Justice,
for the Court:
¶ 1. Ernie and Eugene Barriffe seek compensation for money they gave to Lawson Nelson to start a landfill business, and for improvements they made to an apartment on his land. The chancellor found that Nelson held the money and improvements in a constructive trust. But because the Barriffes failed to establish the existence of a constructive trust, we reverse in part and render.
FACTS AND PROCEDURAL HISTORY
¶ 2. This family stew began from a familiar recipe: Trusting family members enter financial transactions with each other and later discover that their recollections and expectations do not match. And because the family members failed to put anything in writing, the courts are left to sort it out.

The landfill business

¶ 3. The story began when a New Orleans lawyer, Eugene Barriffe, and his wife, Ernie, gave money to Ernie’s brother, Lawson Nelson, to start a landfill business in Jackson County, Mississippi. The Barriffes testified that Lawson approached them for an initial “investment” of $100,-000 — and later, a second “investment” of $65,000 — into his idea to start a landfill business. In return, the Barriffes understood they were to receive two-thirds of the profits from the landfill business, with payments to begin when Eugene retired. Nelson denied the conversation and denied receiving the “investments” from the Bar-riffes.
¶4. During the trial, the chancellor challenged Eugene’s description of the transaction as an investment, noting “[y]ou said it was an investment. It sounds like a loan to me.” The chancellor emphasized that “[i]t looks like a loan. It smells like a loan. It walks like a loan. It talks like a loan.... ” Eugene flatly rejected this characterization and said he “made absolutely sure that everybody understood it was not a loan.”
¶ 5. Lawson used part of the money to purchase 240 acres. Approximately one year later, Lawson put eighty of the 240 acres in Ernie’s name. He later claimed the transfer was for $60,000. In this strange twist to the story, the Barriffes claim they did not give Nelson the $60,000, and that they were unaware of the land *616 transfer. Ernie claims that in March 2002, Nelson told her about the land transfer and asked her to return the land to his name so he could sell all the landfill property. She agreed.
¶ 6. When Lawson sold the landfill business nine months later, Ernie said she “assumed” Lawson would put her and her husband’s interest “in an escrow account so that [they] would have it when [they] asked him for it.” Eugene admitted that he knew Lawson sold the landfill in December 2002, but that he never asked for their two-thirds share of the landfill “[ble-cause the way it had been agreed on was our money was going to come after I retired.” The chancellor then asked Eugene when he retired, and Eugene said he retired when he “hit 65 in 2005[,] which was the year of the hurricane. And we ... didn’t make our demand, Judge.”
¶ 7. When the Barriffes later asked Nelson about their share of the proceeds of the sale of the landfill, Nelson denied they were entitled to anything.

The apartment

¶ 8. After Hurricane Katrina destroyed their home in New Orleans, Ernie and Eugene moved into an apartment on Lawson’s property. The Barriffes testified that they made substantial improvements to the apartment and that Lawson had agreed to convey the property to them in the future. Lawson admitted that he told Ernie that she could live in the apartment for the rest of her life, but that, after he died, he planned to leave the building to his son Dwight.
¶ 9. In 2009, the Barriffes asked Lawson to deed the property with the apartment to them. According to Ernie, Lawson became furious and refused to deed the property to them, deeding it instead to his sons. Lawson’s refusal sparked this litigation filed by the Barriffes on June 10, 2009, against Nelson and the sons.
¶ 10. During the course of the litigation, Lawson died, and his estate was substituted as the real party in interest. Throughout the trial the chancellor sporadically enforced time limits on the parties’ ability to examine witnesses. In one important exchange between the Nelsons’ attorney and Eugene, the chancellor admonished the attorney to “[a]sk your next question ... You’re beyond your 30 by about eight minutes.”
¶ 11. After the trial, the chancellor entered an order finding that “the $165,000 given to Lawson by the Barriffes was a loan and not an investment.” And “[a]s to the apartment the Barriffes built inside the metal building on the Wildwood property, the Court finds that Lawson intended to convey this property to the Barriffes.” The Court then imposed two constructive trusts for the Barriffes — one for the $165,000 when the Barriffes transferred their eighty acres to Lawson to sell, and the second, which was in the nature of an equitable lien on the apartment and property, for $72,645.18.
¶ 12. Displeased with the chancellor’s judgment, the Nelsons moved for reconsideration or a new trial. The chancellor ordered a new trial and re-opened discovery, stating in his order that he granted the new trial to correct “an error in limiting the Plaintiffs’ and the Defendants’ examination and cross examination of the witnesses and for reasons stated in the transcript, record[,] and judgments of the Court.”
¶ 13. After the testimony and other proof in the second trial — which was largely consistent with that of the first trial— the chancellor found that there were actually four constructive trusts, because “the Nelsons[,] through their position of trust and confidence as [a] familyt,] received substantial sums of money from the Bar- *617 riffes without making compensation for the same.”
¶ 14. The chancellor said the first constructive trust began in August 1986 when Lawson bought the landfill with the Bar-riffes’ $100,000 check. While the Barriffes never produced this check, the chancellor “weighed the testimony and evidence around this transaction and finds it credible since it was uncontroverted that Ernie was at the bank when the transaction took place.” The chancellor found that the Bar-riffes’ action on this trust was barred by the statute of limitations.
¶ 15. Next, the chancellor found that the second constructive trust began when the Barriffes built the first floor of the apartment in the metal building in the mid 1990s. The chancellor likewise found that the Barriffes’ action was barred by the statute of limitations.
¶ 16. The chancellor found that the third constructive trust began in March 2002 when the Barriffes transferred eighty acres to Lawson. The chancellor said Lawson admitted the Barriffes gave him at least $60,000 but there was no proof the Barriffes received any money when Lawson sold the landfill. The chancellor found that the Barriffes’ action on this constructive trust was timely and not time-barred.
¶ 17. And finally, the chancellor found that the fourth constructive trust began in December 2005 when the Barriffes spent $36,221.09 on a second-floor addition to the apartment. The chancellor found that “[a] constructive trust is appropriate in this instance due to the fact the statute of frauds prevents an actual award of the Wildwood property to the Barriffes.” The chancellor found that the Barriffes’ action on this constructive trust was also timely.
¶ 18. Ultimately, the chancellor awarded the Barriffes a “joint and several judgment” for $96,221.09 ($60,000 from the ' third constructive trust plus $36,221.09 from the fourth constructive trust) against the Estate of Lawson Nelson and Nelson’s two sons (Nelsons).
¶ 19. Following the chancellor’s second judgment, both parties appealed to this Court. The Barriffes raise four issues in their appeal: First, they argue that the chancellor erred in granting a new trial; second, that he should have awarded attorneys’ fees; third, that he erred in his application of the statute of limitations; and finally, that the statute of frauds does not apply to constructive trusts.
¶ 20. The Nelsons raise three issues in their cross-appeal: First, that the trial court erred in finding that a third constructive trust was created in March 2002; second, the trial court erred in giving the Barriffes’ $96,221; and third, that the chancellor erred in imposing an equitable lien on the apartment.
ANALYSIS
¶ 21. First, we will review the chancellor’s decision to grant a new trial. Second, we will review the chancellor’s analysis of the agreements between the Barriffes and Lawson with respect to constructive trusts. And, finally, we will review the chancellor’s decision to impose an equitable lien against the property for the improvements made by the Barriffes. Because issues two and three are dispositive, we will not address the chancellor’s decision on attorneys’ fees.
I. The chancellor did not abuse his discretion in granting the Nelsons’ motion for a new trial.
. [1,2] ¶ 22. Mississippi Rule of Civil Procedure Rule 59 provides that “[a] new trial may be granted ... in an action tried without a jury, for any of the reasons for which rehearings have heretofore been *618 granted in suits in equity in the Courts of Mississippi.” Trial courts are “given great deference in deciding whether to grant a new trial.”[1] And “[g]iven the important corrective role of new-trial motions, the discretion granted to the court is exceedingly broad.”[2] We review a trial court’s decision to grant a new trial under an abuse-of-discretion standard.[3]
¶23. In this case, the chancellor believed that a new trial was needed because he had sporadically enforced arbitrary time limitations throughout the trial. The chancellor believed a new trial and “a new day” would help him reach the correct result in this case.
¶ 24. This is a close call. We see little evidence in the record that the chancellor was unfair to either side with respect to time limitations, and we note that his threats were mostly unenforced. But we cannot say that the chancellor exceeded his broad authority by granting a new trial in this case. Therefore, we will review the chancellor’s second judgment and findings of fact. We note that, even if we found the chancellor had erred in granting the second trial, our decision and disposition of this case would be no different.
II. The Barriffes are not entitled to a constructive trust related to the landfill contract.
¶ 25. The Barriffes argue that they are entitled to a constructive trust for money they invested in Lawson’s landfill business. The Barriffes’ testimony throughout the trial about their dealings with Lawson was often uncertain and unclear. But the Nelsons consistently have disputed the very existence of the investments, arguing that there was no loan, investment, or constructive trust.
¶ 26. Whether a constructive trust exists is a question of law, which this Court reviews de novo.[4] The party advocating a constructive trust must show by clear and convincing proof that a constructive trust is necessary as a matter of law.[5] “The proof must establish the facts and circumstances giving rise to the trust with an extraordinary degree of certainty and clarity.”[6] Given this heavy burden, this Court views parol testimony about a constructive trust “with caution.”[7]
¶ 27. A constructive trust “is a means recognized in our law whereunder one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs.”[8] But it is well-settled that a constructive trust does not arise simply because a party fails to perform under a contract.[9]
*619 ¶ 28. The Nelsons claimed the $165,000 transaction never happened. The chancellor found that it did happen, and the Bar-riffes provide the only evidence in the record concerning the nature of the transfer of money to Lawson. From the evidence in the record, the chancellor could have found that the transaction never happened. But he found that it did happen, that is, the Barriffes did transfer $165,000 to Lawson.
¶29. The chancellor characterized the transfers as a loan, which is a contract.[10] And, although the Barriffes described the $165,000 as an “investment,” they never claimed to be partners with Nelson or to own part of the business.[11] According to their testimony, their only expectation was that Nelson would fulfill his promise to provide them two-thirds of the profits after Eugene retired. Thus, the Barriffes’ agreement to provide the $165,000 in exchange for Nelson’s promise was nothing more than a contract.[12] So the only remedy available to the Barriffes for their $165,000 transfer to Nelson was one for breach of contract.
¶ 30. We pause here to point out our disagreement with the dissent. Even were we to accept the dissent’s view that the new trial was unwarranted, we cannot agree with its conclusion that the issue of breach of contract was not raised in the first trial. In his findings of fact at the conclusion of the first trial, the chancellor found: “The Court finds the $165,000.00 given to Lawson by the Barriffes was a loan and not an investment.” No citation of authority is necessary for the proposition that a loan indeed is a contract.
¶ 31. We repeat for emphasis: Other than the Barriffes’ testimony that the $165,000 was transferred in exchange for Nelson’s promise to provide them two-thirds of the profits, the record is void of any evidence of any other purpose for the transfer. The chancellor certainly had discretion to find that the transfer of money was never made. But, having found it was made, the chancellor’s discretion does not stretch so far as to allow him simply to make up a reason for the transfer that is unsupported by evidence in the record. He was required to render an opinion based upon the evidence presented.
¶ 32. The Nelsons consistently have argued that the Barriffes’ claims are barred by the statute of limitations. The statute of limitations on a claim begins to run when the cause of action accrues and becomes enforceable.[13] A party must *620 bring an action to enforce the contract within three years of the breach.[14]
¶ 33’. At the trial, Eugene testified several times that he retired when he turned sixty-five sometime in 2005. By 2005, Lawson already had sold the landfill, and Eugene was entitled to his entire share of the landfill profits. Under. Mississippi’s three-year statute of limitations for breach of contract, the Barriffes must have filed suit to recover their interest in the landfill within three years of Eugene’s retirement. So, even if Eugene retired on December 31, 2005, the latest the Barriffes could have filed suit to enforce their agreement with Lawson was December 31, 2008. Because they waited to file suit until June 2009, the Barriffes’ cause of action expired, and Lawson’s promise to pay the Barriffes their two-thirds interest became, unenforceable.[15] Statutes of limitations are not mere suggestions; parties must bring timely claims or else forfeit their right to seek judicial relief.[16]
¶ 34. We find no facts in this case support the creation of a constructive trust and that the chancellor erred when he created one for the benefit of the Barriffes. The Barriffes proved nothing more than that Lawson breached a unilateral contract, and the Barriffes did not bring their action for breach of this promise within three years of Eugene’s retirement.[17] The chancellor erred in finding a constructive trust, and the Barriffes’ breaeh-of-contract action is barred by the statute of limitation. So, we must reverse the chancellor’s ruling on that issue and render judgment in favor of the Nelsons.
III. The Barriffes are not entitled to an equitable lien on the Nelsons’ property.
¶ 35. During the trial, the Barriffes testified on numerous occasions that, in exchange for the improvements they made to the apartment, Lawson had agreed to convey the property to them. Lawson disputed this verbal contract. Regardless, the Barriffes’ claim fails because they have no written agreement.
¶ 36. We review a chancellor’s decision to impose an equitable lien de novo.[18] “[A]n equitable lien ... is the right by which a creditor is entitled to obtain satisfaction of his debt by resort to specified property belonging to the debtor, [when] ... it is clear that the debtor intended to create an encumbrance.”[19] But an equitable lien is not appropriate to en- *621 force a contract that otherwise fails to meet the requirements of the statute of frauds.[20] Under Mississippi’s statute of frauds, contracts involving the transfer of real property must be in writing.[21]
¶ 37. The Barriffes claim they had an oral agreement with Lawson that they could make improvements on his land and that he would transfer the land to them. This alleged contract fails under the statute of frauds. An equitable lien cannot save a contract that violates the statute of frauds.[22]
¶ 38. Further, the Barriffes constructed and made improvements to an apartment they knew was on land that belonged to Lawson, so they do not qualify for the protection granted those who have a good-faith — though mistaken — belief that they were making improvements to their own land.[23] Thus, the chancellor erred as a matter of law when he imposed an equitable lien on the Nelsons’ property for the value of the improvements the Barriffes made.
CONCLUSION
¶ 39. The chancellor did not abuse his discretion when he granted the Nelsons’ motion for a new trial. However, the chancellor did err as a matter of law when he imposed a constructive trust for the benefit of the Barriffes and when he imposed an equitable lien on the Nelsons’ property. We affirm the parts of the chancellor’s judgment granting the motion for new trial and denying the Barriffes’ attorneys’ fees. In all other respects, we reverse the chancellor’s judgment in this case and render judgement in favor of the Nelsons.
¶ 40. ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART AND RENDERED. ON CROSS-APPEAL: REVERSED AND RENDERED.
WALLER, C.J., RANDOLPH, P.J., LAMAR AND PIERCE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. KING, J., NOT PARTICIPATING.

. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992) (citing Motorola Commc’ns & Elecs., Inc. v. Wilkerson, 555 So.2d 713, 723 (Miss.1989)), overruled by Dedeaux v. Pellerin Laundry, Inc., 947 So.2d 900 (Miss.2007).

. Jack H. Friedenthal, et al., Civil Procedure 592 (4th ed. 2005).

. Rogers v. Morin, 791 So.2d 815, 821 (Miss.2001) (citing Muhammad v. Muhammad, 622 So.2d 1239, 1250 (Miss.1993)).

. Davidson v. Davidson, 667 So.2d 616, 620 (Miss.1995) (citing Seymour v. Brunswick, 655 So.2d 892 (Miss.1995)).

. Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1034 (Miss.1990) (citing Allgood v. Allgood, 473 So.2d 416, 421 (Miss.1985)).

. Lipe v. Souther, 224 Miss. 473, 483, 80 So.2d 471, 475 (1955) (citing Stovall v. Stovall, 218 Miss. 364, 67 So.2d 391 (1953)).

. Lipe, 80 So.2d at 475.

. Allgood, 473 So.2d at 421 (citing Sojourner v. Sojourner, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963); Russell v. Douglas, 243 Miss. 497, 505-06, 138 So.2d 730, 734 (1962); Rimmer v. Austin, 191 Miss. 664, 668, 4 So.2d 224, 225 (1941)).

. Sojourner, 153 So.2d at 807 (internal citations omitted).

. But see First Money, Inc. v. Frisby, 369 So.2d 746, 751 (Miss.1979) (holding that contract at issue was unenforceable and not a crop loan because there was no agreement as to when the alleged lender would provide money, how much the lender would provide, the interest rate the lender would charge, and if the lender would have any security interest in the crop).

. See, e.g., Hults v. Tillman, 480 So.2d 1134, 1143 (Miss.1985) (noting that actual intent to form a joint venture is essential to finding that parties are joint venturers).

. See 1 Williston on Contracts § 4:8 (4th ed. 2014) (“In practice, an offer contemplating a unilateral contract almost invariably involves an exchange of the offeror’s promise for the offeree’s act; that is, the offeror is the party who becomes bound as promisor when the contract is formed by acceptance."). See also Sec. & Exch. Comm’n v. WJ. Howey Co., 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946) (quoting State v. Gopher Tire & Rubber Co., 146 Minn. 52, 56, 177 N.W. 937, 938 (1920)) (defining an investment contract as "a contract or scheme for 'the placing of capital or laying out of money in a way intended to secure income or profit from its employment.' ”).

.Anderson v. LaVere, 136 So.3d 404, 411 (Miss.2014) (citing Bullard v. Guardian Life Ins. Co. of Am., 941 So.2d 812, 815 (Miss.2006)).

. Miss.Code Ann. § 15-1-49 (Rev.2012).

. See Morgan v. Stevens, 989 So.2d 482, 484 (Miss.Ct.App.2008) (holding that failure to bring timely action to collect on debt three years and ten months after default extinguished debt).

. See Harrison "Enters., Inc. v. Trilogy Commc’ns, Inc., 818 So.2d 1088, 1096 (Miss.2002) (noting that the purposes behind statutes of limitations are "to discourage lawsuits”; "reward the vigilant, not the negligent”; and "to prevent false and stale claims.”).

. Our opinion should not be read to say there can never be a constructive trust in a case involving a contract. See Sojourner, 153 So.2d at 807 (holding that a breach of con-trad will give rise to a construdive trust only when the other party entered the contract never intending to abide by its terms) (internal citations omitted); Lipe, 80 So.2d at 473-74 (holding that the remedy of a constructive trust could not vary the terms of a written deed).

. See Countrywide Home Loans, Inc. v. Parker, 975 So.2d 233, 234 (Miss.2008) (citing Biglane v. Under the Hill Corp., 949 So.2d 9, 14 (Miss.2007)) ("A chancellor’s rulings on questions of law are reviewed de novo.”).

. Lindsey v. Lindsey, 612 So.2d 376, 379 (Miss.1992) (quoting Pincus v. Collins, 198 Miss. 283, 22 So.2d 361 (1945)).

. See Dobbs v. Bowling, 339 So.2d 985, 986 (Miss.1976) (quoting Lewis v. Williams, 186 Miss. 701, 712, 191 So. 479 (1939)) (‘‘[I]f the oral agreement constituted a constructive trust, ‘then, we shall have practically abolished the statute of frauds[ ]_' ”).

. Miss.Code Ann. § 15-3-l(c) (Rev. 2012); see also Sharpsburg Farms, Inc. v. Williams, 363 So.2d 1350, 1354 (Miss.1978) ("The principal purpose of the Statute of Frauds ... is to require the contracting parties to reduce to writing the specific terms of their contract, especially an agreement affecting lands....”).

. Dobbs, 339 So.2d at 986; see also Van Sickle v. Keck, 42 N.M. 450, 81 P.2d 707, 710 (1938) ("A court of equity will not relieve an individual from the operation of the statute of frauds, which requires that interest in lands be created by an instrument of writing, and impose an equitable lien upon the land in favor of one who makes improvements thereon knowing that the title is in another....”) (citing Wash. Mkt. Co. v. D.C., 172 U.S. 361, 19 S.Ct. 218, 43 L.Ed. 478 (1899); Spencer v. Williams, 113 W.Va. 687, 170 S.E. 179 (1933); 113 W.Va. 687, 170 S.E. 179, 89 A.L.R. 1451; Perry v. Neel, 126 Neb. 106, 252 N.W. 812 (1934); Thorbahn v. Walker’s Estate, 269 Mich. 586, 257 N.W. 892 (1934)).

.See Wilie v. Brooks, 45 Miss. 542, 548 (1871); Cole v. Johnson, 53 Miss. 94, 99-100 (1876) (noting “[t]he requirement that the party making the improvements 'shall claim the premises under some deed or contract of purchase made or acquired in good faith,’ must mean nothing more than an honest belief on his part that he is the true owner.”); McGee v. Wallis, 57 Miss. 638, 646 (1880).