# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2016

Lyle W. Cayce
Clerk

No. 15-60292
Summary Calendar

SOMPRASONG SONGCHAROEN, Doctor; S. SONGCHAROEN, M.D., FACS, P.L.L.C.,

      Plaintiffs - Appellees

v.

PLASTIC & HAND SURGERY ASSOCIATES, P.L.L.C.,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:11-CV-308

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:*

    This case represents the last remnant of a larger dispute between these parties. In 2007, Dr. Somprasong Songcharoen withdrew from his medical practice, Plastic and Hand Surgery Associates, P.L.L.C. ("PHSA"). Several years later, he filed suit against PHSA under the contracts governing the rights and obligations of the physicians in the PHSA medical practice. After a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

jury trial and subsequent appeal, the only remaining issue is PHSA's counterclaim raising breach of contract and quasi-contract theories. The district court granted Dr. Songcharoen's summary judgment motion on PHSA's counterclaim. We AFFIRM.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this appeal are straightforward and undisputed.[1] The relationship between the parties is governed by two contracts. First, on January 1, 2002, Dr. Songcharoen and his limited liability company, S. Songcharoen, M.D., FACS, P.L.L.C. ("Songcharoen P.L.L.C."), entered into an Operating Agreement making them members of the PHSA medical practice. The Operating Agreement is not at issue in this appeal. Second, on the same day, Songcharoen P.L.L.C. entered into a Physician Professional Services Contract (the "Service Contract" or "Contract") under which Dr. Songcharoen agreed to provide professional services for PHSA.

After executing these agreements, Dr. Songcharoen took "senior status" pursuant to the terms of the Service Contract. The relevant contractual provision states:

> 21.1 Eligibility for Part-Time or Senior Status. At such time as Physician has practiced medicine in Jackson, Mississippi for at least fifteen (15) years in the aggregate, Contractor shall be entitled to provide PHSA with at least six (6) months' prior written notice of Physician's desire to convert to part-time status or senior status. Part-time status will involve a change in compensation pursuant to Section 21.3, whereas conversion to senior status affects only call obligations in accordance with Section 21.4. In addition, the three original shareholders of Plastic Surgery Associates, P.A. shall be entitled to convert to part-time or senior status upon at least six (6) months' prior written notice. Unless

---

[1] We set forth a full recitation of the facts and background of the entire dispute between these parties in *Songcharoen v. Plastic & Hand Surgery Associates, P.L.L.C.*, 561 F. App'x 327 (5th Cir. 2014).

No. 15-60292

PHSA's Membership unanimously agrees in writing, part-time or senior status shall be allowed for only up to five (5) years. The parties shall negotiate and agree in writing on the compensation and other terms applicable to any extension beyond five years of part-time or senior status.

By taking senior status, Dr. Songcharoen was largely exempt from weekend or after-hours "call" responsibilities. Being on "call" means that a physician is available by phone if needed by a patient or the hospital. Specifically, the Service Contract provided:

21.4 Call. Physicians who voluntarily convert to senior or part-time status pursuant to this Article 21 shall not be required to take weekend or after-hours call responsibilities provided that at least five (5) full-time and call-taking surgeons remain direct or indirect members of PHSA.

In January 2007, at the end of his five-year stint of senior status, Dr. Songcharoen gave written notice of his intent to resign from PHSA. The parties agreed to set an official resignation date of December 31, 2007.[2] Immediately after resigning from PHSA, Dr. Songcharoen moved his practice to a new firm, Mississippi Premier Plastic Surgery, P.L.L.C.

On December 30, 2010, Dr. Songcharoen filed suit against PHSA asserting a number of claims. PHSA filed a counterclaim alleging, amongst other things, that Dr. Songcharoen was not entitled to the call-time exemption benefit he received during his senior status because he did not completely retire from medical practice after leaving PHSA. Specifically, PHSA asserted breach of contract and quasi-contract theories, seeking repayment of the value of the call time that Dr. Songcharoen avoided by taking senior status.

The dispute was initially resolved through summary judgment briefing and a jury trial. In particular, PHSA's counterclaim for call-time damages was

---

[2] Under the terms of this agreement, Dr. Songcharoen was responsible for his pro rata share of call duties—*i.e.*, he could no longer claim the senior status call exemption—until his resignation on December 31, 2007.

dismissed at summary judgment as time-barred. On appeal, we affirmed as to all issues except PHSA's counterclaim for call-time damages, which we remanded for further consideration. *See Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 F. App'x 327 (5th Cir. 2014) ("*Songcharoen I*"). On remand, Dr. Songcharoen filed a renewed motion for summary judgment as to PHSA's counterclaim. The district court granted Dr. Songcharoen's motion and PHSA now appeals.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 895 (5th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citation and internal quotation marks omitted).

As this appeal only involves state law claims, Mississippi substantive law and federal procedural law apply. *See Songcharoen I*, 561 F. App'x at 332 (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)).[3]

---

[3] A note on jurisdiction: as we explained in *Songcharoen I*, Dr. Songcharoen originally asserted claims for breach of contract, hostile work environment, and age discrimination. *See Songcharoen I,* 561 F. App'x at 332. PHSA invoked federal subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 and removed the action to federal district court. Although Dr. Songcharoen's claims under federal law were later voluntarily dismissed, the district court continued to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. We now have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

No. 15-60292

## III.     DISCUSSION

### A.

PHSA's primary argument on appeal is that Dr. Songcharoen was required, under the Service Contract, to retire from the medical profession following his completion of five years in senior status.  In other words, PHSA claims that retirement was a necessary condition under the contract for Dr. Songcharoen to receive the benefit of avoiding call duty for five years.  We disagree, as PHSA's argument is not supported by the clear and unambiguous terms of the Service Contract.

Under Mississippi law, a party asserting a breach of contract claim must prove (1) the existence of a valid and binding contract, and (2) that the defendant breached that contract.  *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (Miss. 2012).  The parties agree that the Service Contract is a valid and binding contract; the only issue is whether Dr. Songcharoen breached the contract by not retiring from the medical profession after his five-year period of senior status.

In interpreting the meaning of a contract, Mississippi courts first "look to the 'four corners' of the agreement and review the actual language the parties used in their agreement." *West v. West*, 891 So. 2d 203, 210–11 (Miss. 2004).  "When the language of the contract is clear or unambiguous, [a reviewing court] must effectuate the parties' intent." *Id.* at 210.

Here, Section 21.1 of the Service Contract sets out the terms and conditions for taking senior status.  The provision explains who can take senior status (the three original shareholders of PHSA upon at least six months' prior written notice, amongst others), how long senior status lasts (up to five years), and the process for granting an extension to senior status (the PHSA's membership must unanimously agree to the extension in writing, and the parties must agree in writing on the compensation and other terms applicable

5

to any extension). Section 21.1 also contains a cross-reference to Section 21.4, and together the two provisions largely exempt individuals on senior status from weekend and after-hours call duty. PHSA does not argue that Dr. Songcharoen failed to comply with these express terms. Further, these provisions are clear and unambiguous, and nothing in their language suggests that Dr. Songcharoen was required to retire from the medical profession after five years of senior status.

Undaunted, PHSA argues that two other provisions in the Service Contract—Sections 8.A and 9.A—support the proposition that Dr. Songcharoen was contractually required to retire from medical practice after taking senior status. We disagree. Section 8.A explains that: (1) the parties may terminate or continue the Service Contract by mutual consent; otherwise (2) the Service Contract terminates upon the earlier of Dr. Songcharoen reaching age 70 or five years from the date Dr. Songcharoen commenced senior status. Section 9.A sets out the payments owed to Dr. Songcharoen upon the termination of the Service Contract. Specifically, Section 9.A states that "[u]pon termination by retirement at age 70 or upon five years of senior or part-time status pursuant to Section 8.A, . . . PHSA shall make termination payments" according to a specified formula. Section 9.A then states that if the Contract is terminated by mutual consent or unilaterally with one year's notice, and Dr. Songcharoen decides to practice medicine after the Service Contract terminates, he receives a reduced termination payment.[4] In other words, Section 9.A creates a disincentive for Dr. Songcharoen to compete with PHSA after the Service Contract terminates, but only when the Contract is terminated by mutual consent or unilaterally with one year's notice; Dr.

---

[4] In fact, Dr. Songcharoen was awarded the reduced termination payment under Section 9.A in *Songcharoen I.*

No. 15-60292

Songcharoen would not be punished for continuing to practice if the Contract terminates because of his age or because he completed five years of senior status.  In short, nothing in these provisions mandates Dr. Songcharoen's retirement from the practice of medicine following senior status; they simply state that, following the completion of the five-year period of senior status, the Service Contract automatically terminates unless further agreement between the parties is reached.

The final arrow in PHSA's quiver is parol evidence that it claims proves that the parties intended that Dr. Songcharoen would retire from medical practice after five years of senior status.  However, "[p]arol evidence may be considered only if the contract is unclear or ambiguous and if the court is unable to translate a clear understanding of the parties' intent." *In re Estate of Fitzner*, 881 So. 2d 164, 171 (Miss. 2003).  As previously explained, the relevant provisions of the Service Contract are clear and unambiguous; accordingly, PHSA's parol evidence cannot alter the Contract's plain meaning.

Because Dr. Songcharoen complied with the express terms of the Service Contract as it relates to taking senior status, PHSA has failed to raise a genuine issue of material fact in relation to its breach of contract claim for call-time damages.

**B.**

PHSA next turns to the implied covenant of good faith and fair dealing and the quasi-contractual theories of unjust enrichment and restitution in an attempt to recover call-time damages.  These arguments have no force.

PHSA's quasi-contractual theories fail because the Service Contract governs the propriety of Dr. Songcharoen taking senior status and his subsequent decision not to retire from the medical profession.  As the district court explained, quasi-contractual claims will not lie under Mississippi law where, as here, there is an existing legal contract governing the dispute

between the parties. *See Barriffe v. Estate of Nelson*, 153 So. 3d 613, 627 (Miss. 2014) ("The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract . . . ." (quoting *Dew v. Langford*, 666 So. 2d 739, 745 (Miss. 1995)); *Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 442 (Miss. 2012) ("Unjust enrichment only applies to situations where there is no legal contract . . . ." (quoting *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)); *Ellis v. Anderson Tully Co.*, 727 So. 2d 716, 719 (Miss. 1998) ("To collect under an unjust enrichment or quasi-contract theory, the claimant must show there is no legal contract . . . ." (internal quotation marks omitted)).

Similarly, PHSA cannot use the implied covenant of good faith and fair dealing to write an additional condition for taking senior status into the Service Contract. Simply put, a party has not breached the implied covenant of good faith and fair dealing when, as here, the party "took only those actions which were duly authorized by the contract." *Limbert v. Miss. Univ. for Women Alumnae Ass'n, Inc.*, 998 So. 2d 993, 999 (Miss. 2008) (quoting *GMAC v. Baymon*, 732 So. 2d 262, 269 (Miss. 1999)).

Accordingly, PHSA's claims under the implied covenant of good faith and fair dealing and the quasi-contractual theories of unjust enrichment and restitution cannot withstand summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, we AFFIRM.