# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00599-COA

**LAMAR D. BOND**                                                    **APPELLANT**

**v.**

**LEE N. BOND AND JENNIFER M. BOND**                         **APPELLEES**

DATE OF JUDGMENT:              03/31/2017
TRIAL JUDGE:                  HON. MICHAEL L. FONDREN
COURT FROM WHICH APPEALED:    JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       E. FOLEY RANSON
ATTORNEYS FOR APPELLEES:      G. CHARLES BORDIS IV
                              JOSHUA WESLEY DANOS
NATURE OF THE CASE:           CIVIL - REAL PROPERTY
DISPOSITION:                  AFFIRMED: 10/30/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., FAIR AND TINDELL, JJ.

### FAIR, J., FOR THE COURT:

¶1.     Lamar Bond spent a substantial amount of money building a workshop and apartment on the homestead of his son and daughter-in-law, Lee and Jennifer Bond.  Lamar lived in the apartment for a couple of years until Lee—a police officer—discovered Lamar was using marijuana regularly.  Lee and Jennifer had Lamar removed from the property, and Lamar ultimately brought suit against them, alleging that Lee and Jennifer had violated an agreement that Lamar could reside on their property for the remainder of his life.

¶2.     At trial, Lee and Jennifer disputed Lamar's claim, contending that his stay was intended to be temporary, until his divorce was finalized.  They alleged Lamar spent the money to dissipate his assets prior to the divorce and that the money was a gift, which was

intended to be an advance on Lee's inheritance and a project for a father and son after years of estrangement. Lee and Jennifer further claimed the apartment was ultimately intended to be used for visits by extended family and not by Lamar as a permanent residence. Lee's three brothers also testified that their father had never told them he planned to reside in the apartment permanently.

¶3.     The chancellor decided that Lee's and Jennifer's testimonies were more credible and found that there had been no promise to let Lamar live in the apartment indefinitely. The court concluded that Lamar was not entitled to a constructive trust or an equitable lien on the property. On appeal, Lamar challenges these findings, but we find them supported by substantial evidence and affirm.

## STANDARD OF REVIEW

¶4.     This Court employs "a limited standard of review in appeals from . . . chancery court[s]." *Corp. Mgmt. Inc. v. Greene County*, 23 So. 3d 454, 459 (¶11) (Miss. 2009) (citing *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001)). As such, appellate courts will not disturb a chancery court's factual findings "when supported by substantial evidence unless the [court] abused [its] discretion, was manifestly wrong, clearly erroneous[,] or applied an erroneous legal standard." *Id.* (quoting *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 13-14 (¶17) (Miss. 2007)). Questions of law, however, will be reviewed de novo. *Id.*

## DISCUSSION

1.     **Equitable Lien**

2

¶5.    At trial, Lamar claimed he was entitled to a constructive trust regarding the property, but the chancery court found that issue foreclosed upon by Lamar's failure to show that a confidential relationship existed among him, Lee, and Jennifer.  On appeal, Lamar abandoned that claim; he instead argues he is entitled to an equitable lien.  The chancery court can grant an equitable lien to prevent unjust enrichment "where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another."  *Neyland v. Neyland*, 482 So. 2d 228, 230 (1986).

¶6.    Lee and Jennifer contend that this issue is procedurally barred on appeal because Lamar did not expressly seek an equitable lien in his complaint in the chancery court.  The record reveals that the issue was suggested in the original pleadings, and it was clearly articulated in briefing and arguments prior to the judgment. Lee and Jennifer made no objection.  "Where a party offers no timely objection, we treat the issue as having been tried by implied consent." *Queen v. Queen*, 551 So. 2d 197, 200 (Miss. 1989).  Thus, the question of an equitable lien is squarely before us on appeal.

¶7.    The chancery court denied relief on this particular claim based on the statute of frauds.[1]  The court noted that the Mississippi Supreme Court held in *Barriffe v. Estate of*

---

[1] There might have been a potential issue with waiver of this defense because the statute of frauds is an affirmative defense that must be timely asserted by the defendant; and arguably it was not in this case.  *See Brown v. Gravlee Lumber Co.*, 341 So. 2d 907, 912 (Miss. 1977).  But Lamar has not argued waiver, and, thus, he has waived the issue.  *See Thornton v. Freeman*, 242 So. 3d 188, 190 (¶3) (Miss. Ct. App. 2018) (explaining that "waiver . . . can itself be waived").

*Nelson*, 153 So. 3d 613, 620-21 (¶36) (Miss. 2014), that "an equitable lien is not appropriate to enforce a contract that otherwise fails to meet the requirements of the statute of frauds." "Under Mississippi's statute of frauds, contracts involving the transfer of real property must be in writing." *Id.* Our supreme court quoted, with approval, the New Mexico Supreme Court's holding in *Van Sickle v. Keck*, 81 P.2d 707, 710 (N.M. 1938): "A court of equity will not relieve an individual from the operation of the statute of frauds, which requires that interest in lands be created by an instrument of writing, and impose an equitable lien upon the land in favor of one who makes improvements thereon knowing that the title is in another." *Bariffe*, 153 So. 3d at 621 n.22.

¶8.     Lamar conceded that he knew the title to the property was held by Lee and Jennifer. So, like the chancery court, we are bound by the supreme court's holding in *Barriffe* that the statute of frauds bars an equitable lien. This issue is without merit.

### 2.     Restitution

¶9.     Finally, we address Lamar's claim for money damages. He appears to argue he is entitled to restitution for unjust enrichment. Our analysis of this issue is complicated by the paucity of argument in the chancery court (and, indeed, on appeal). In Lamar's complaint "for a constructive trust," he also contended he was entitled to a money judgment for the money he gave Lee and Jennifer (or the money he allowed them to take). Lamar contended that Lee and Jennifer used their authority as joint owners of Lamar's retirement account to transfer about $158,000 to their own bank account and then spent or converted it. Lee and

4

Jennifer said Lamar transferred the funds and then used Lee's debit card to spend most of the money; the rest was given to them for living expenses while Lamar stayed with them and while Lee could not work while building the disputed workshop/apartment. Voluminous bank records were introduced at trial, but neither side made much effort to trace where the money went; both sides said the other would know how the money was spent. Lamar claims he is entitled to restitution for the value of the improvement and for the money that was taken above and beyond the realistic cost of constructing it, which comes out to about $120,000.

¶10. But despite alleging that he was entitled to a money judgment in his complaint, Lamar never expressly articulated a cause of action that entitled him to recover it; unjust enrichment is only addressed, in cursory fashion, in his contentions concerning constructive trusts and equitable liens (of which unjust enrichment is an element). Restitution is never mentioned at all. The chancery court, in its judgment, noted that Lamar sought money damages, but it did not address them directly except perhaps when it stated in closing that "all other relief is denied." The chancellor did say he found Lee's and Jennifer's testimonies credible, and Lamar's not; but he did not explicitly resolve the many of the factual disputes surrounding Lamar's unjust enrichment theory, nor did he make any express finding that is dispositive of the claim.

¶11. This case is appropriate for the application of the oft-repeated maxim that "where a chancellor does not make explicit findings, [appellate courts] will assume that all disputed issues were resolved in favor of the appellees." *Ross v. Brasell*, 511 So. 2d 492, 495 (Miss.

5

1987). Lee and Jennifer testified that Lamar gave them the money as a gift, without conditions. Lamar testified otherwise. The factual issue raised and the finding by the chancellor that the children were more credible than Lamar is sufficient to defeat Lamar's unjust enrichment claim; there is nothing unjust in Lee and Jennifer being enriched by a gift, nor in Lamar not being able to take it back. *See Cates v. Swain*, 215 So. 3d 492, 496 (¶¶18-19) (Miss. 2013).

¶12.    **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.    IRVING, P.J, NOT PARTICIPATING.**